Filed 10/8/14  Wineland-Thomson Adventures v. Doe-1 CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WINELAND-THOMSON ADVENTURES, INC., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DOE 1, <br><br>     Defendant and Appellant. | A140537 <br><br> (City & County of San Francisco Super. Ct. No. CGC-13-528871) |

Doe 1 (Doe) appeals from the denial of its special motion to strike the complaint of Wineland-Thomson Adventures, Inc., doing business as Thomson Safaris (Thomson) under the so-called anti-SLAPP[1] statute (Code Civ. Proc., § 425.16).[2] The complaint alleges causes of action for defamation and tortious interference with prospective economic advantage based on Doe's creation of a website, "Stop Thomson Safaris," accusing Thomson of multiple acts of criminal and unethical conduct in the management of land in Tanzania where Thomson operates tours and safaris. In denying the motion, the trial court held that although Doe had "made a prima facie showing that the alleged conduct arises from protected activity," Thomson "produced sufficient evidence to demonstrate a probability of prevailing" in the action. We agree with the trial court's evaluation of the evidence submitted in opposition to the motion and shall affirm.

---

[1] "SLAPP" is an acronym for Strategic Lawsuits Against Public Participation.

[2] All statutory references are to the Code of Civil Procedure unless otherwise noted.

## Background

The complaint alleges that Doe used a website named "WEEBLY" to accuse Thomson and its principals of engaging in the beating of children and adults, illegally confiscating property, refusing to allow local inhabitants access to water sources, confining and starving members of the local Tanzanian community, burning homes, and bribing police and other government officials, all of which Thomson alleges is false and libelous on its face.[3] The complaint further alleges that these statements encourage visitors to avoid travelling with Thomson and instead to travel with other tour companies (that Thomson elsewhere suggests are the true party or parties behind the website), and that the false statements were made "willfully, maliciously and deliberately attempt[ing] to deprive [Thomson] of the ability to compete in the tour industry." Thomson alleges that it has been damaged by a resulting loss of reputation and of business and the need to incur additional offsetting expenses.

The record in support of and opposition to the special motion to strike contains several pages from the Stop Thomson Safaris website in which the allegedly false statements are made either explicitly or implicitly. The opposition also contains several declarations asserting the falsity of the statements and the lack of any knowledge of specific alleged incidents by the supervisors who presumably would be aware of the facts if true. It is unnecessary to recite in this opinion all of the charges and denials contained in the record, but we shall set forth below sufficient specifics to dispose of the issues on appeal. In finding that Thomson's showing met its burden under the second prong of the anti-SLAPP analysis, the trial court stated simply that "[t]he declarations produced by plaintiff are circumstantial evidence showing that the statements on the website were false."

Doe has timely appealed from the denial of the special motion to strike.

---

[3] Although subsequent to the filing of the special motion to strike Thomson filed an amended complaint, the trial court properly confined its analysis to the allegations contained in the original complaint.

## Discussion

The parameters of a special motion to strike have been stated and re-stated many times. We quote here from our opinion in *Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267, 271-272: " 'A SLAPP suit . . . seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.' [Citation.] '[U]nder . . . section 425.16, subdivision (b)(1), a defendant may move to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue . . . ." ' [Citation.] [¶] In ruling on a motion to strike under section 425.16, subdivision (b)(1), the court must engage in a two-step process. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ' [Citation.] Only an action that lacks all merit is subject to a special motion to strike. [Citation.] '[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " [Citation.] "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " ' [Citation.] [¶] We review the trial court rulings on the special motion to strike de novo."

Although Thomson disputes the issue, we shall assume, without deciding, as the trial court held, that the challenged statements accusing Thomson in a public forum of mistreating the Tanzanian Maasai in the conduct of its tour business is an issue of public interest which is protected activity within the meaning of section 425.16—thus satisfying the first prong of the anti-SLAPP analysis.

Doe challenges on numerous grounds the trial court's finding that Thomson has made a prima facie showing of its ability to prevail. None of these grounds has merit.

Doe argues that the allegations in the original complaint do not provide the specificity necessary to meet the heightened pleading standard applicable to a defamation claim. (E.g., *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 31.) However, while further specificity may be required to proceed with the cause of action, the court is not precluded from considering Thomson's showing of its ability to provide such specificity in connection with the second prong of the anti-SLAPP analysis. "A motion to strike under section 425.16 is not a substitute for a motion for a demurrer or summary judgment. [Citation.] . . . It is enough that the plaintiff demonstrates that the suit is viable, so that the court should deny the special motion to strike and allow the case to go forward." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 905.) The pages from the website included in the record amply demonstrate Thomson's ability to provide the necessary specificity of the facts on which its claims are based.

Doe's more fundamental objection is that the website does no more than report proceedings taking place in the courts of Tanzania and before the United Nations High Commissioner for Human Rights, so that the challenged statements are privileged under Civil Code section 47, subdivision (d). However, while the website does make extended reference to these proceedings, in context the allegedly libelous statements plainly assert, or at least imply, as matters of fact allegations that apparently have been made in those proceedings. For example, the home page of the website, titled "Stop Thomson Safaris," begins with the bold face caption: "Boycott Thomson Safaris and Stop Them Land Grabbing from the Maasai People!" The opening paragraph recites, "rather than behave ethically they have evicted locals from the land and committed a string of abuses and

4

human rights violations against poor and vulnerable indigenous population." Then, although referring to them as "*alleged* abuses undertaken by Thomson Safaris staff against the local Maasai community," the website bullet points the following:

"● Beatings of children and adults grazing cattle on or near the land

"● Illegal confiscation of cows grazing the land

"● Refusal to let locals access the Pololet River, traditionally the communities vital water source. During the 2009 drought this resulted in the death of 75% of local cattle

"● Extra-judicial detention of locals for trespass for days without food

"● Children as young as six forced to walk a 16km round trip around the land to get to primary school and back every day

"● Burnings of local peoples *bomas* (homes) built on the land

"● Bribing leaders of the poorest clan to stoke divisions in the resistance to the company and maintain control of the land

"● Bribing of local police and district officials to ensure they will intimidate the community on Thomson's behalf"

The webpage goes on to present a "case study" titled "Young boys beaten and injured at Sukenya Farm by Thomson Safari guard, 30th May 2011." The text of this "case study" begins: "On 30th May 2011 Thomson Safari[] guards found two children grazing cattle near the Sukenya farm. One of the guards asked them why they were grazing cattle at the farm. The boys answered that they were not grazing at the farm but were just grazing around the nearby mountain. The TS guard was carrying a spear, long knife and two sticks. The guard took one of his sticks and beat the boys." The recitation continues by describing injuries to the two boys. Under the heading "Who we are," the webpage reads: "The Stop Thomson Safaris campaign is run by a group of people who have seen firsthand the effect of Thomson's occupation on the residents of Loliondo and decided to raise awareness about the situation." Another page of the website describes other beatings and assaults by "police and Thomson Safaris security-guards." These

statements do not purport to describe allegations that have been made in judicial or United Nations proceedings; they purport to present the true facts.

Doe also asserts that the challenged statements are merely non-actionable opinions. (See *Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601*; Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 387.) But while portions of the website contain many statements that may be no more than opinions, such as the assertion that "Thomson continue[s] to abuse their position as a wealthy foreign investor with disproportionate influence over local police and the District Commissioner," other statements, such as the descriptions of assaults by Thomson security guards, clearly do not express opinions and purport to describe past events. A prima facie showing in support of "any part" of a plaintiff's claim is sufficient to defeat a special motion to strike. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

Doe also contends that Thomson has failed to produce competent evidence to establish the falsity of the statements made on the website. Doe argues that Thomson's evidence that several Thomson personnel deny any knowledge of facts alleged on the website does not tend to negate those facts. However, focusing simply on the beating allegations, numerous supervisors who presumably would be aware of those facts if true categorically denied the truth of the allegations. For example, the declaration of Daniel Yamat, the project manager from September 2007 to June 2011 for the owner of the 12,600 acre parcel where Thomson Safaris conducts safaris, states "there is no truth in the allegation concerning Thomson Safaris' alleged '[b]eatings of children and adults grazing cattle on or near the land' . . . . As to the specific alleged abuses which the website affirmatively asserts or intimates as having taken place during my tenure, I vigorously dispute all of them, including, without limitation, the assertion that Thomson Safaris engaged in the '[b]eat[ing]' and 'injur[ing]' of two boys, ages 11 and 13, for allegedly grazing cattle on May 30, 2011 . . . ." Similarly, under the heading "Persecution and harassment of Odupoi Ndekerei by Thomson Safaris continues," another webpage referred to a December 10, 2012 arrest of Odupoi Ndekerei "by Thomson guards for 'trespassing' and grazing cattle on the disputed land." But the declaration of Josiah

6

Severe, the project manager of the land after January 2012, states that "there is no truth to the allegation that Thomson Safaris beats or detains any members of the local population. . . . [¶] . . . I have never beaten or arrested any member of the local community. Nor have I ever instructed or authorized any person to beat or detain any member of the local population, or heard of any beatings or detentions by any Thomson Safaris or TCL staff. I also categorically deny the various specific beatings alleged in the Website to have been inflicted by Thomson Safaris or TCL staff during my tenure at TCL, including without limitation the alleged 'persecution and harassment' of an individual by the name of Odupoi Ndekerei on or about December 9, 2012 by 'arrest[ing]' him for trespassing and 'beat[ing]' him." While these and several like declarations may not be conclusive, they do constitute "circumstantial evidence . . . that the statements on the website were false," as the trial court held.  In view of the on-site presence and responsibilities of the declarants, their testimony is sufficient to support the reasonable inference that the alleged beatings and harassment did not occur.

The briefing contains extended argument concerning numerous other allegedly defamatory statements, the admissibility of evidence, and other subsidiary issues, such as whether Thomson is a "limited purpose public figure" as to whom malice must be proved to impose liability.[4] It is unnecessary at this stage to rule on the multiplicity of additional issues briefed by the parties. It is sufficient to conclude, for the purpose of evaluating the denial of the special motion to strike, that Thomson has presented competent evidence of at least one statement of fact, reasonably susceptible of a defamatory meaning, that is false and unprivileged and which has a natural tendency to injure. (See, e.g., *Ringler Associates, Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1179; *Barnes-Hind, Inc. v. Superior Court (Allergan Pharmaceuticals, Inc.)* (1986) 181 Cal.App.3d 377, 383.) Based on this evidence, the trial court properly held that Thomson had carried

---

[4] Even if, contrary to the trial court's ruling, Thomson should be considered a limited purpose public figure, the issue of malice can hardly be considered while Doe's identity remains unknown.

its burden under the second prong of the anti-SLAPP analysis and denied the special motion to strike.

**Disposition**

The order denying the special motion to strike is affirmed.[5]

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.

---

[5] Doe's motion for judicial notice is granted with respect to those items as to which the trial court took judicial notice, and to exhibits M, N and O of Doe's first request for judicial notice, appearing at pages 116-125 of the joint appendix, not for the truth of the matters asserted therein but only for the fact of their publication. The motion is denied with respect to those items to which the trial court denied Doe's request to take judicial notice and with respect to exhibit I of Doe's first request for judicial notice, appearing at pages 61-72 of the joint appendix.